IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| NAKITA L. GILYARD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. 5:14-CV-185-MTT-MSH |
| | : | 42 U.S.C. § 1983 |
| GREGORY McLAUGHLIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants' motion to dismiss the Complaint. (ECF No. 24.) Also pending are Plaintiff's motions for injunctive relief (ECF No. 20), and motions for appointment of counsel (ECF Nos. 17, 21). For the reasons explained below, it is recommended that Defendants' motion to dismiss be granted, and Plaintiff's motion for injunctive relief and motions for appointment of counsel be denied.

## BACKGROUND

Plaintiff, an inmate currently held at Macon State Prison, filed this action under 42 U.S.C. § 1983 against four prison officials claiming that they had violated his Fourteenth, Eighth, and First Amendment rights in various ways. (ECF Nos. 1, 8, & 9.) Upon initial review under 28 U.S.C. § 1915A, the Court dismissed two Defendants and all of Plaintiff's claims except his claim against Defendants Bostick and Bobbitt for violation of his Fourteenth Amendment right to due process in his confinement in the "Tier II Administrative Segregation Program," and his claim for retaliation against Defendant

Bobbitt in violation of his First Amendment rights.  (Order & Recommendation 13, July 2, 2014, ECF No. 11 (*adopted as the Order of the Court by* Order, Aug. 6, 2014, ECF No. 19).)

With regard to his claim for violation of his Fourteenth Amendment due process rights, Plaintiff alleges that he has been confined in the prison's administrative segregation program since October 24, 2013.  (Compl. 5.)  He alleges that an officer told him he was placed in segregation because he was classified as a "threat to the safe and secure operation of the facility."  (*Id*.)  Plaintiff states that on October 27, 2013, Defendant Bostick conducted an "illegal seg[regation] hearing" at which he was not given an opportunity to challenge his placement.  (*Id*. at 6.)  He states that he filed a grievance regarding his classification without a hearing (#159829) on October 28, 2013 (Compl. 6) and alleges that the warden rejected it November 18, 2013 because inmates cannot grieve such a classification (*id*. at 8).  He further states that he appealed the rejection of his grievance on November 19, 2013 but that his appeal was also rejected without explanation.  (*Id*.)

Plaintiff alleges that he had a conversation with a counselor who explained that he was placed in the Tier II program due to his classification as a "threat to the safe and secure operation of the facility," because he had received twenty-five disciplinary reports within the previous twelve months, and because of his classification as a member of the Crip gang. (Compl. 7.)  Plaintiff allegedly disputed each of these claims and argued that he had been deprived of his due process right to present evidence on his behalf.  (*Id*.)  Plaintiff further alleges that he received a letter from the warden who stated that he was placed in the program because he had received "14 DRs in 2013 and you only need three (3) for the

2

program." In response to Plaintiff's contention that not all of the cited disciplinary reports resulted in findings of guilt, the warden allegedly told Plaintiff that, "Just because they [the disciplinary reports] were dismissed doesn't mean that it didn't happen." (*Id*. at 10.)

Plaintiff states that on January 27, 2014, Defendants Bobbitt and Bostick conducted a 90-day review of his placement in the Tier-II program. (*Id*.) He states that he was not notified of the hearing as is required by the handbook and was not allowed to present any evidence on his own behalf. (*Id*.) Plaintiff alleges that the outcome of the 90-day review hearing was that he was not allowed to move up in the program because he had received a single disciplinary report based on his failure to properly make his bed. (*Id*.) Plaintiff claims that he can be held in the Tier-II program anywhere from nine months to two years and that there is no oversight to prevent abuses that put prisoners into the program without penological justification or based on disciplinary reports for which the inmate has already been punished. (Compl. 11.)

## DISCUSSION

### I.  Motion to Dismiss

#### A.  First Amendment Retaliation Claim

Defendant Bobbitt moves to dismiss Plaintiff's First Amendment retaliation claim arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this action. (Defs.' Br. in Supp. of Mot. to Dismiss 3.) In his response to the motion, Plaintiff asserts that he properly grieved the issue of Defendant Bobbitt's alleged retaliation against him and that his claim should not be dismissed for failure to exhaust. (Pl.'s Resp. in Opp'n 3-5, ECF No. 28.) As explained below, however, the Court finds that Plaintiff

3

failed to exhaust his administrative remedies as to his retaliation claim because he did not complete the grievance process prior to filing this lawsuit. Consequently, that claim should be dismissed without prejudice.

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted). The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

In *Smith v. Terry*, 491 F. App'x 81 (11th Cir. 2012), a case out of the Middle District of Georgia, the Eleventh Circuit affirmed the dismissal of a prisoner's § 1983 claim for failure to exhaust his administrative remedies under § 1997e(a). The court there reaffirmed that it interprets "the term 'brought'—as used in section 1997e(a)—to mean 'the filing or commencement of a lawsuit, not . . . its continuation.'" *Id.* at 83 (quoting *Harris v. Garner,* 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*)). Therefore, the court

4

found, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Id*. Thus, for a plaintiff to properly exhaust his administrative remedies he must complete the grievance process before filing the lawsuit, and the fact that he may have subsequently completed the grievance process after filing the lawsuit does not save the claim from dismissal under § 1997e(a).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id*. If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id*. "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. The defendant bears the burden of proof during this second step. *Id*.

Defendants show the Court that Macon State Prison had a grievance procedure in place at the time the alleged violations took place. (Defs.' Br. in Supp. of Mot. to Dismiss 5.) The procedure is a two-step process requiring a formal grievance, and an appeal with the GDOC Central Office. (Mot. to Dismiss, Ex. A. Walker Aff. 2-5, ECF No. 24-2.) Defendants state that a review of Plaintiff's grievance history showed that Plaintiff had filed a grievance (#171680) alleging that Defendant Bobbitt and two others had retaliated against him by allowing his roommate to progress in the Tier program, but denied him

5

from progressing based upon the fact that contraband was found in their cell. (Walker Aff. 8-9.) Grievance #171680 was denied on May 23, 2014. (*Id.* at 9.) Plaintiff appealed that decision on May 31, 2014, and his appeal was denied on June 26, 2014. (*Id.*) Defendants argue that based on this timeline, it is clear that Plaintiff had not properly exhausted the grievance procedure on the date he filed this lawsuit, May 12, 2014. (Defs.' Br. in Supp. of Mot. to Dismiss 10.)

Plaintiff's response does not contradict Defendant's version of the facts. Plaintiff states that he filed grievance # 171680 on April 24, 2014. (Pl.'s Resp. 4.) He admits that he then filed this action on May 12, 2014 before receiving a response about his grievance. (*Id.*) Notably, the retaliation claim was not included in Plaintiff's initial Complaint. Plaintiff states that he received the response denying his grievance on May 23, 2014, appealed that response soon thereafter, and filed his amended complaint alleging the retaliation claim on May 30, 2014. (*Id.* at 4-5.) He finally received the denial of his appeal on July 3, 2014, thereby finalizing the grievance process. (*Id.* at 5.)

At the first step of the exhaustion analysis, the Court is to look to the Defendant's contentions and Plaintiff's response to see if they conflict over the fundamental question of whether or not Plaintiff fully exhausted his administrative remedies prior to filing suit. In this case, the two accounts do not conflict. Both sides agree that although Plaintiff filed a relevant grievance on the retaliation issue, it was not fully exhausted before May 12, 2014. The fact that Plaintiff completed and fully exhausted the grievance process after that time does not change the ultimate determination. Neither does the fact that the retaliation claim was not brought into this case until Plaintiff's Amended Complaint filed on May 30, 2014.

6

Even if the filing of an amended complaint and assertion of additional claims were to change the operative date for the purposes of exhausting administrative remedies on those additional claims (and the Court interprets *Smith v. Terry* to say that it does not), Plaintiff still did not complete the grievance procedure until his appeal was denied on June 26, 2014. Consequently, Defendants have shown that Plaintiff failed to exhaust his administrative remedies with regard to his retaliation claim against Defendant Bobbitt prior to filing this lawsuit. It is therefore recommended that the retaliation claim be dismissed without prejudice.

      B.      Fourteenth Amendment Due Process Claim

Defendants argue that Plaintiff's remaining claim for violation of his Fourteenth Amendment due process rights should be dismissed because it fails to state a claim under Rule 12(b) of the Federal Rules of Civil Procedure. (Defs.' Br. in Supp. of Mot. to Dismiss 10-14.) Specifically, Defendants assert that Plaintiff has not pled sufficient facts to support a due process violation claim because he has not shown a deprivation of a constitutionally-protected liberty or property interest. (*Id*. at 12-14.) Plaintiff argues that he has properly asserted a due process claim. (Pl.'s Resp. 6-8.)

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Plaintiff contends that Defendants violated his right to procedural due process in classifying and confining him to the administrative segregation Tier II program without notice or an opportunity to be heard.  Defendants move to dismiss the claims arguing that Plaintiff has not stated a claim for denial of his procedural due process rights because he has not shown a protected liberty interest was implicated by his classification.

It is well-settled that prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008); *see also Meachum v. Fano,* 427 U.S. 215, 223-24 (1976) (finding the transfer of a prisoner to less agreeable prison does not implicate a liberty interest).  However, a prisoner may claim a violation of a protected liberty interest arising out of his confinement in punitive segregation if the placement (1) "will inevitably affect the duration of his sentence;" or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff's allegations fail to fulfill the *Sandin* requirements.  Initially, Plaintiff makes no allegation that his placement in the administrative segregation program is punitive or "will inevitably affect the duration of his sentence."  Furthermore, Plaintiff fails to allege how the conditions in the program differ from the "ordinary incidents of prison life," and certainly has not made a compelling argument that they are an "atypical and significant hardship" in comparison.   Plaintiff describes the conditions in the program in detail, but makes little to no mention of the conditions for prisoners not in administrative segregation.   Plaintiff's repeated use of the phrase "atypical and significant hardship" does not fulfill the pleading requirement.  Something more than the conclusory statement that the listed conditions are an "atypical and significant hardship" is required; Plaintiff must state or allege <u>facts</u> that show an "atypical and significant hardship."

As Defendants argue in their reply brief, the *Sandin* court held that confinement in segregation is a type of discipline that should be expected by an inmate incident to his criminal sentence.  515 U.S. at 485.  As such, the Court ruled that confinement to segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Id.* at 486.  The Eleventh Circuit has repeatedly held after *Sandin* that no liberty interest is implicated in these types of cases. *See e.g. Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) ("While Morefield's four-year confinement in administrative segregation was lengthy, it did not tip the balance in favor of establishing a liberty interest when weighed against other factors in his case."). Without establishing a protected liberty interest, Plaintiff cannot make out a claim for violation of his due process rights and has therefore failed to state a claim.  Defendants'


motion should be granted as to Plaintiff's Fourteenth Amendment due process claim.

## II.     Motion for Temporary Restraining Order/Preliminary Injunction

Plaintiff also seeks injunctive relief against Defendants. (Pl.'s Mot. for Inj. Relief, ECF No. 20.) Such relief is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). As detailed above, the Court finds that Plaintiff's claims should be dismissed. Therefore, Plaintiff has failed to show a "substantial likelihood of success on the merits." Accordingly, it is recommended that Plaintiff's motion for injunctive relief (ECF No. 20) be denied.

## III.    Motions to Appoint Counsel

Plaintiff has filed two motions for appointment of counsel. (ECF Nos. 17, 21.) Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." However, there is "no absolute constitutional right to the appointment of counsel." *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court should consider, among other factors, the merits of Plaintiff's claim

and the complexity of the issues presented.  *Holt v. Ford*, 682 F.2d 850, 853 (11th Cir. 1989).   Because the Court recommends that Plaintiff's claims be dismissed at this stage, Plaintiff's motions to appoint counsel are moot and should be denied.

## CONCLUSION

WHEREFORE, for the reasons explained above, it is RECOMMENDED that Defendant's motion to dismiss the complaint (ECF No. 24) be GRANTED.  It is further RECOMMENDED that Plaintiff's motion for injunctive relief (ECF No. 20), and motions for appointment of counsel (ECF Nos. 17, 21) be DENIED.   Under 28 U.S.C. § 636(b)(1), the parties may file objections to this Recommendation in writing with the United States District Judge within fourteen (14) days after being served with a copy hereof

SO ORDERED, this 19th day of December, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE